UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JIMMIE REYNOLDS, JR. ) | CASE NO. |
| 5035 Geer Lane ) | |
| Toledo, OH 43615 ) | JUDGE: |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR DAMAGES** |
| ) | **AND REINSTATEMENT** |
| ) | |
| CITY OF TOLEDO ) | **JURY DEMAND ENDORSED** |
| One Government Center, Suite 2250 ) | **HEREIN** |
| Toledo, OH 43604 ) | |
| ) | |
| **Please Also Serve:** ) | |
| CITY OF TOLEDO ) | |
| Sewer and Drainage Dept. ) | |
| 4032 Creekside Avenue ) | |
| Toledo, OH 43612 ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Jimmie Reynolds, Jr., by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Reynolds is a resident of the city of Toledo, county of Lucas, state of Ohio.

2. City of Toledo ("Toledo") is a resident of the state of Ohio.

3. Toledo is an Ohio municipal corporation.

4. Toledo is a political subdivision.

5. Toledo operates a Sewer and Drainage Department.

6. At all times material herein, Toledo was Reynolds's employer pursuant to R.C. § 4123.01(B).

7. At all times material herein, Toledo was Reynolds's employer pursuant to R.C. § 4113.51(B).

8. All of the material events alleged in this Complaint occurred in Lucas County.



The Employee's Attorney.™

9. The United States Department of Justice, Civil Rights Division, issued a Notice of Right to Sue on October 8, 2020.

10. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

11. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

1. Reynolds is a former employee of Toledo.

2. Reynolds is African-American.

3. Jeff Parker was a foreman for the City of Toledo Sewer and Drainage Department.

4. Parker was Reynold's foreman and his immediate supervisor.

5. Parker is white.

6. Reynolds was a Sewer Drainage worker from June 7, 1997 until he was wrongfully terminated on October 21, 2019.

7. Reynolds had a disciplinary incident in 2016, which resulted in him having a three-year :last chance agreement" with Toledo.

8. The "last chance agreement" was set to expire on September 15, 2019.

9. On June 15, 2019, Reynolds was in a motor vehicle accident and suffered a sever concussion.

10. After the motor vehicle accident, Reynolds was diagnosed with Transient Alteration of Awareness, memory loss, and post-concussion syndrome.

11. Transient Alteration of awareness, memory loss, and post-concussion syndrome severely impact many facets of Reynolds life, including work.

12. These physical and mental impairments from the motor vehicle accident are not transitory.

13. Despite these physical and mental impairments, Reynolds was otherwise qualified for his job and was able to perform his job's essential functions.

14. Despite this, Reynolds began facing discrimination from his coworkers and supervisors due to his disabilities.

15. Reynolds began receiving work assignments with William Palmer, another disabled worker.

16. Palmer is African American.

17. Other similarly-situated white, non-disabled employees were sent to jobs without the required number of workers to complete the tasks.

18. Reynolds and Palmer would be given tasks that were typically completed by a crew of four or more workers.

19. Parker, in the presence of Reynolds, told other Toledo employees that Reynolds was "playing crazy" to get out of doing work.

20. Parker accused Reynolds of "faking" his disabilities.

21. Parker told Reynolds that he was "just lazy" and was using his "fake" disabilities to avoid completing his work.

22. Parker alleged that citizens were calling to complain that Reynolds was "lazy" although Reynolds was never provided any corroborating information.

23. Parker never brough complaints to Reynolds about his "being lazy" prior to the motor vehicle accident or the onset of his disabilities.

24. Parker never discussed an individualized assessment with Reynolds of his medical condition after the motor vehicle accident.

25. Parker never discussed providing Reynolds with reasonable accommodations after his motor vehicle accident and onset of his disabilities.

26. Rather than engage in an interactive process to discuss accommodations, Parker created complaints about Reynolds work ethic that mirrored his comments to other employees about Reynolds "faking" his disability as an excuse for being lazy.

27. Only July 19, 2019, Reynolds filled out paperwork so he could take FMLA leave.

28. Reynolds primary care doctor submitted the FMLA paperwork to Toledo on July 26, 2019.

29. The very same day, July 26, 2019, Parker wrote up Reynolds, stating that an anonymous citizen reported that Reynolds was sitting in his truck.

30. Parker refused to give a citizen name or any additional details regarding the alleged July 26, 2019 citizen complaint.

31. When asked, Parker could not explain how the citizen knew to call and complain about Reynolds individually or knew what task Reynolds was assigned for the day.

32. Suspecting that Parker was falsifying citizen complaints, Reynolds called dispatch to ask about the citizen complaints.

33. Dispatch responded to Reynolds and stated that there were no documented complaints on July 26, 2019, reaffirming Reynolds suspicions.

34. Reynolds returned to the worksite and spoke with several citizens in the surrounding area.

35. One citizen told Reynolds that a City of Toledo employee stopped them and asked if they would volunteer to file a complaint against Reynolds, which they refused.

36. Parker was using these falsified complaints in an effort to prevent Reynolds's "last chance agreement" from expiring.

37. On July 29, 2019, Parker issued another "last chance agreement" to Reynold's based on the falsified July 26, 2019 citizen complaint.

38. Parker used the falsified citizen complaint to prevent Reynolds from taking FMLA leave.

39. Parker used the falsified citizen complaints in order to retaliate against Reynolds for requesting FMLA leave.

40. Other similarly-situated white employees were not placed on three-year "last chance agreements" for citizen complaints.

41. Al Down, a white, non-disabled employee, damaged a water truck on a job.

42. Down was not disciplined or given a write up.

43. Down was not given a three-year "last chance agreement.

44. Eric Breugger, a white, non-disabled employee, pressure-flushed raw sewage into a citizen's home, causing extensive property damage.

45. Breugger was not disciplined or given a write up.

46. Breugger was not placed on a three-year "last chance agreement."

47. Parker frequently allowed less qualified, less senior, white employees, who were not Reynolds's supervisors, to supervise and evaluate Reynolds's job performance.

48. Upon information and belief, no non-white employees were placed on a three-year "last chance agreements" during Reynolds's tenure with Toledo.

49. Reynolds was placed on the July 29, 2019 "last chance agreement" due to his race and disability.

50. Parker's falsified citizen complaints were pretextual.

51. Parker's falsified citizen complaints were used as a basis to further the disability and racial discrimination against Reynolds.

52. Parker used the "last chance agreement" as a basis to wrongfully terminate Reynolds due to his race and disability.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

53. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

54. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

55. +D Corp+ is a covered employer under the FMLA.

56. During his employment, Reynolds qualified for FMLA leave.

57. During his employment, Reynolds attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

58. Defendants failed to properly advise Reynolds of his rights under the FMLA.

59. Defendants unlawfully interfered with Reynolds's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

60. Toledo's act of writing Reynolds up during his FMLA leave violated and interfered with Reynolds 's FMLA rights.

61. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Reynolds 's FMLA rights when Defendants did not honor Reynolds 's approved use of FMLA leave.

62. As a direct and proximate result of Defendants' conduct, Reynolds is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

63. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

64. During his employment, Reynolds utilized FMLA leave.

65. After Reynolds attempted to utilize his qualified FMLA leave, Defendants retaliated against him.

66. Defendants retaliated against Reynolds by falsifying citizen complaints.

67. Defendants retaliated against Reynolds by using those complaints to issue a new, three-year, "last chance agreement."

68. Defendants retaliated against Reynolds by terminating his employment.

69. Defendants willfully retaliated against Reynolds in violation of U.S.C. § 2615(a).

70. As a direct and proximate result of Defendants' wrongful conduct, Reynolds is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT III: DISABILITY DISCRIMINATION

71. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

72. Reynolds suffers from Transient Alteration of Awareness, memory loss, and post-concussion syndrome.

73. Reynolds is disabled.

74. In the alternative, Toledo perceived Reynolds as being disabled.

75. Reynolds's condition constituted a physical impairment.

76. Reynolds's condition substantially impaired one or more of his/her major life activities including working.

77. Toledo perceived Reynolds's condition to substantially impair one or more of his major life activities including working.

78. Toledo treated Reynolds differently than other similarly-situated employees based on his disabling condition.

79. Parker treated Reynolds differently than other similarly-situated employees based on his perceived disabling condition.

80. On or about October 21, 2019, Defendant terminated Reynolds's employment without just cause.

81. Defendant terminated Reynolds's employment based his disability.

82. Defendant terminated Reynolds's employment based his perceived disability.

83. Defendant violated R.C. § 4112.02 when it discharged Reynolds based on his disability.

84. Defendant violated R.C. § 4112.02 when it discharged Reynolds based on his perceived disability.

85. +D+ violated R.C. § 4112.02 by discriminating against Reynolds based on his disabling condition.

86. Toledo violated R.C. § 4112.02 by discriminating against Reynolds based on his perceived disabling condition.

87. Reynolds suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

88. As a direct and proximate result of Defendant's conduct, Reynolds suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT**

132. Reynolds informed Toledo of his disabling condition.

8

133. Reynolds requested accommodations from Toledo to assist with his disabilities.

134. Reynolds's requested accommodations were reasonable.

135. There was an accommodation available that would have been effective and would have not posed an undue hardship to Toledo.

136. Toledo failed to engage in the interactive process of determining whether Reynolds needed an accommodation.

137. Toledo failed to provide an accommodation.

138. Toledo violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

139. As a direct and proximate result of Toledo's conduct, Reynolds suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 et. seq.

140. Reynolds informed Defendants of his disabling condition.

141. Reynolds requested accommodations from Defendants to assist with his disabilities including moving to a different location.

142. Reynolds's requested accommodations were reasonable.

143. There was an accommodation available that would have been effective and would have not posed an undue hardship to Toledo.

144. Defendants failed to engage in the interactive process of determining whether Reynolds needed an accommodation.

145. Defendants failed to provide an accommodation.

146. Defendants violated R.C. § 4112.02 by failing to provide Reynolds a reasonable accommodation.

147. Reynolds suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

148. As a direct and proximate result of Defendants' conduct, Reynolds suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: RACE DISCRIMINATION

89. Reynolds restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Throughout his employment, Reynolds was fully competent to perform his essential job duties.

91. SUPERVIOSR treated Reynolds differently than other similarly situated employees based on his race.

92. Parker violated R.C. § 4112.02(A) *et seq.* by discriminating against Reynolds due to his race.

93. On or about October 21, 2019, Toledo terminated Reynolds without just cause.

94. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

95. Defendants terminated Reynolds based on her/his race.

96. Defendants violated R.C. § 4112.01 et. seq. when it terminated Reynolds based on his race.

97. Reynolds suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

98. As a direct and proximate result of Defendants' conduct, Reynolds has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Reynolds demands from Defendants the following:

(a) Issue an order requiring City of Toledo to restore Reynolds to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Reynolds for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Reynolds claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

                                                Respectfully submitted,

                                                *Andrew Pappert, Esq.* _____
                                                Brian D. Spitz (0068816)
                                                Andrew D. Pappert (0093964)
                                                **THE SPITZ LAW FIRM, LLC**
                                                25200 Chagrin Boulevard, Suite 200
                                                Beachwood, OH 44122
                                                Phone: (216) 291-4744
                                                Fax:   (216) 291-5744
                                                Email: brian.spitz@spitzlawfirm.com
                                                           drew.pappert@spitzlawfirm.com

                                                *Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Jimmie Reynolds, Jr. demands a trial by jury by the maximum number of jurors permitted.

*Andrew Pappert, Esq.*
Andrew D. Pappert (0093964)